IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAMIA KHALIL, M.D., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-01954 |
| | § | |
| MEMORIAL HERMANN HEALTH | § | |
| SYSTEM D/B/A MEMORIAL HERMANN | § | |
| HOSPITAL, MEDICAL CENTER AND | § | |
| D/B/A CHILDREN'S MEMORIAL | § | |
| HOSPITAL AND UTH MCGOVERN | § | |
| MEDICAL SCHOOL | § | |
| Defendants. | § | |

**DEFENDANT MEMORIAL HERMANN'S MOTION TO DISMISS
PURSUANT TO THE TEXAS CITIZENS PARTICIPATION ACT,
MOTION FOR FEES, AND MOTION FOR SANCTIONS**

Defendant Memorial Hermann Health System ("Memorial Hermann") files this Motion

to Dismiss Pursuant to the Texas Citizens Participation Act, Motion for Fees, and Motion for

Sanctions, and would respectfully show as follows:

# TABLE OF CONTENTS

**Page**

Summary and Statement of the Issues ........................................................................... 1

Relevant Facts and Proceedings ................................................................................... 2

Argument and Authorities ............................................................................................ 5

I.      Dr. Khalil's claims against Memorial Hermann are subject to dismissal under the TCPA because those claims are based on, related to, or in response to Memorial Hermann's exercise of its constitutional rights to free speech, to petition, and to association. ........... 5

    A.      Although it is a state law, the TCPA framework applies in federal court. ............. 5

    B.      The TCPA provides the framework for dismissal of Dr. Khalil's claims. ............. 6

    C.      Dr. Khalil's claims against Memorial Hermann are subject to dismissal under the TCPA. ................................................................................................. 9

        1.      Dr. Khalil's claims relate to Memorial Hermann's exercise of their right to free speech. ................................................................................. 9

            a.      *Khalil I* is dispositive: the facts Dr. Khalil alleges against Memorial Hermann implicate the TCPA. ..................................... 12

            b.      Under *Whisenhunt II*, Dr. Khalil's claims are subject to dismissal under the TCPA. ............................................................ 14

        2.      Dr. Khalil's claims relate to Memorial Hermann's exercise of their right to petition. ................................................................................ 16

        3.      Dr. Khalil's claims relate to Memorial Hermann's exercise of their right of association. ........................................................................... 17

    D.      Even if Dr. Khalil meets her prima facie burden, her claims must still be dismissed because Memorial Hermann has established valid defenses. ............... 18

        1.      Memorial Hermann's communications are protected as peer review communications. .................................................................................. 18

        2.      Dr. Khalil's claims are barred because she did not name Memorial Hermann in any charge filed with any commission and therefore failed to exhaust her administrative remedies. .................................................. 22

        3.      Dr. Khalil's TCHRA claims are barred because she did not bring this lawsuit within 60 days of receiving her Right to Sue Letter. .................... 24

    E.      The TCPA entitles Memorial Hermann to costs, attorneys' fees, and other expenses incurred in defending against Dr. Khalil's claims. ............................... 24

    F.      Dr. Khalil must be sanctioned pursuant to the TCPA. ......................................... 25

Conclusion and Prayer ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Heath,*
  6:16-CV-51 MHS-JDL, 2016 WL 7971294 (E.D. Tex. May 6, 2016), *report and recomm. adopted*, 6:16-CV-51, 2016 WL 3033561 (E.D. Tex. May 27, 2016) ............................................................................................................6

*Am. Heritage Capital, L.P. v. Gonzalez,*
  436 S.W.3d 865 (Tex. App.—Dallas, 2014, no pet.) ..................................25

*Attaya v. Shoukfeh,*
  962 S.W.2d 237 (Tex. App.—Amarillo 1998, pet. denied) .....................17

*B & B Hardware, Inc. v. Hargis Indus., Inc.,*
  135 S. Ct. 1293 (2015) .............................................................................13

*Banik v. Tamez,*
  7:16-CV-462, 2017 WL 1228498 (S.D. Tex. Apr. 4, 2017) ......................6

*Barkley v. Carraux,*
  533 F. Supp. 242 (S.D. Tex. 1982) ..........................................................22

*Better Bus. Bureau of Metro. Dallas, Inc. v. Ward,*
  401 S.W.3d 440 (Tex. App.—Dallas 2013, pet. denied) .............................8

*Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.,*
  441 S.W.3d 345 (Tex. App.–Houston [1st Dist.] 2013, pet. denied) ........8

*Boone v. Union Carbide Corp.,*
  205 F. Supp. 2d 689 (S.D. Tex. 2002) ....................................................23

*Bowe v. Colgate-Palmolive Co.,*
  416 F.2d 711 (7th Cir. 1969) ...................................................................22

*Charalambopoulos v. Grammer,*
  3:14-CV-2424-D, 2015 WL 5165344 (N.D. Tex. Sept. 3, 2015) .............8

*Ching v. Methodist Children's Hospital,*
  134 S.W.3d 235 (Tex. App.—Amarillo 2003, pet denied) .....................19

*City of San Antonio v. Cortes,*
  468 S.W.3d 580 (Tex. App.—San Antonio 2015, pet. denied) ...............14

*Cuba v. Pylant,*
  814 F.3d 701 (5th Cir. 2016) .....................................................................6

*Dallas County Med. Soc'y v. Ubinas Brache*,
    68 S.W.3d 31 (Tex. App.—Dallas 2001)............................................................21

*E.E.O.C. v. Simbaki, Ltd.*,
    767 F.3d 475 (5th Cir. 2014) ............................................................................23

*Edwards v. Kaye*,
    9 S.W.3d 310 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ...................14

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938)............................................................................................5

*ExxonMobil Pipeline Co. v. Coleman*,
    512 S.W.3d 895 (Tex. 2017)..................................................................7, 10, 15

*Fitzmaurice v. Jones*,
    417 S.W.3d 627 (Tex. App.—Houston [14th Dist.] 2013, no pet. h.)...................9

*Garcia v. Aramark Corr. Services, Inc.*,
    CIVA 3:07-CV-00444, 2008 WL 7627809 (S.D. Tex. Apr. 28, 2008)...................24

*Golnik v. Amato*,
    299 F. Supp. 2d 8 (D. Conn. 2003).....................................................................22

*Gunning v. San Antonio Teachers Credit Union*,
    652 F. Supp. 697 (W.D. Tex. 1987).....................................................................22

*Hartz v. Administrators of Tulane Educ. Fund*,
    275 Fed. Appx. 281 (5th Cir. 2008).....................................................................23

*Haynes v. Crenshaw*,
    166 F. Supp. 3d 764 (E.D. Tex. 2016)..........................................................8, 10

*Haynes v. Crenshaw*,
    166 F. Supp. 3d 773 (E.D. Tex. 2016)..........................................................6, 10

*Hernandez v. Baylor Univ.*,
    6:16-CV-69-RP, 2017 WL 1322262 (W.D. Tex. Apr. 7, 2017).............................5

*Hersh v. Tatum*,
    ___ S.W.3d ___, 2017 WL 2839873 (Tex. June 30, 2017) ...................................7

*Hicks v. Group & Pension Administrators, Inc.*,
    473 S.W.3d 518 (Tex. App.—Corpus Christi 2015, no pet.) .................................7

*Hidalgo v. Surety Sav. & Loan Ass'n*,
    462 S.W.2d 540 (Tex. 1971)................................................................................8

40265498v.6

*Jurek v. Williams WPC-I, Inc.*,
   CIV.A. H-08-01451, 2009 WL 1748732 (S.D. Tex. June 17, 2009)
   (Rosenthal, J.) ............................................................................................................23

*Khalil v. Memorial Hermann Health System et al.*,
   Cause No. 2015-77483, 334th .....................................................................................2

*Kibler v. Northern Inyo County Local Hospital Dist.*,
   138 P.3d 193 (Cal. 2006) ...........................................................................................16

*Kinnard v. United Reg'l Health Care Sys.*,
   194 S.W.3d 54 (Tex. App.—Fort Worth 2006, pet. denied) ...........................19, 21

*Laidlaw Waste Sys., Inc. v. City of Wilmer*,
   904 S.W.2d 656 (Tex. 1995)..........................................................................................8

*Lippincott v. Whisenhunt*,
   462 S.W.3d 507 (Tex. 2015)................................................................................ *passim*

*In re Lipsky*,
   460 S.W.3d 579 (Tex. 2015)...........................................................................6, 7, 8, 9

*Maewal v. Adventist Health Sys.*,
   868 S.W.2d 886 (Tex. App.—Fort Worth 1993, writ denied)...........................19, 20

*McKenzie Const. Co. v. City of San Antonio*,
   50 S.W.2d 349 (Tex. Civ. App.—San Antonio 1932, writ ref'd)............................14

*Mem'l Hermann Health Sys. v. Khalil*,
   01-16-00512-CV, 2017 WL 3389645 (Tex. App.—Houston [1st Dist.] Aug. 8,
   2017, no pet. h.) ................................................................................................ *passim*

*Memorial Hospital-The Woodlands v. McGown*,
   927 S.W.2d 1 (Tex. 1996)...........................................................................................10

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
   745 F.3d 742 (5th Cir. 2014) .......................................................................................6

*NCDR LLC v. Mauze & Bagby, PLLC*,
   CV L-12-36, 2012 WL 12871954 (S.D. Tex. Oct. 5, 2012)........................................6

*Oscar Mayer & Co. v. Evans*,
   441 U.S. 750 (1979)....................................................................................................22

*Matter of Pancake*,
   106 F.3d 1242 (5th Cir. 1997) ....................................................................................13

iv

*Pashby v. Letum Care, Inc.*,
    CIVA 05-1507, 2006 WL 2700697 (W.D. La. Sept. 15, 2006)..............................................22

*Poliner v. Texas Health Sys.*,
    537 F.3d 368 (5th Cir. 2008) ........................................................................................21

*Rivers v. Johnson Custodial Home, Inc.*,
    A-14-CA-484-SS, 2014 WL 4199540 (W.D. Tex. Aug. 22, 2014)..............................................6

*Roberts v. Padre Island Brewing Co., Inc.*,
    28 S.W.3d 618 (Tex. App.—Corpus Christi 2000, pet. denied)..............................................24

*Schimmel v. McGregor*,
    438 S.W.3d 847 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)..............................................25

*Sibley v. Kaiser Foundation Health Plan of Texas*,
    998 S.W.2d 399 (Tex. App.—Texarkana 1999, no pet.)..............................................24

*Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*,
    883 F.2d 345 (5th Cir. 1989) ........................................................................................5

*Souter v. State*,
    05-91-00836-CR, 1995 WL 398446 (Tex. App.—Dallas July 7, 1995, no pet.) ...................14

*St. Luke's Episcopal Hosp. v. Agbor*,
    952 S.W.2d 503 (Tex. 1997)........................................................................................20

*Sullivan v. Abraham*,
    488 S.W.3d 294 (Tex. 2016)........................................................................................24

*Sysco Food Services, Inc. v. Trapnell*,
    890 S.W.2d 796 (Tex. 1994)........................................................................................13

*Totz v. Owens*,
    01-16-00753-CV, 2017 WL 2178890 (Tex. App.—Houston [1st Dist.] May
    18, 2017, no pet. h.) ........................................................................................14

*Walker v. Schion*,
    420 S.W.3d 454 (Tex. App.—Houston [14th Dist.] 2014, no pet.)........................................9

*Walsh v. Aries Freight Sys., L.P.*,
    CIV.A. H-07-2628, 2007 WL 3001650 (S.D. Tex. Oct. 12, 2007) (Rosenthal, J.)................23

*Ware v. State*,
    736 S.W.2d 700 (Tex. Crim. App. 1987)........................................................................................14

*Wheeler v. Methodist Hosp.*,
    95 S.W.3d 628 (Tex. App.—Houston [1st Dist] 2002, no pet.) ..............................................20

v

*Whisenhunt v. Lippincott*,
    474 S.W.3d 30 (Tex. App.—Texarkana 2015, no pet.) ........................................................15

*Wilhite v. Adams*,
    640 S.W.2d 875 (Tex. 1982).............................................................................................14

*Williams v. Cordillera Commc'ns, Inc.*,
    2:13-CV-124, 2014 WL 2611746 (S.D. Tex. June 11, 2014)................................................6

*Windle v. Mary Kay, Inc.*,
    No. 05–02–00252–CV, 2003 WL 21508782 (Tex. App.—Dallas July 1, 2003,
    pet. denied) (mem. op.)....................................................................................................24

*Yazdchi v. San Antonio Fed. Credit Union*,
    01-07-00189-CV, 2009 WL 417299 (Tex. App.—Houston [1st Dist.] Feb. 19,
    2009, no pet.) ...................................................................................................................14

**Statutes**

29 U.S.C. § 626(e) ..........................................................................................................22

42 U.S.C. § 2000e-5(f)(1) ...............................................................................................23

42 U.S.C. § 11101 ......................................................................................................10, 19

42 U.S.C. § 11111(a) .......................................................................................................19

42 U.S.C. § 11112(a) .......................................................................................................19

42 U.S.C. § 11133 ...........................................................................................................17

42 U.S.C. § 11151(10) ................................................................................................19, 21

Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* .............................3, 4, 11, 22

Civil Rights Act of 1964 Title VII, 42 U.S.C. 2000e *et seq.* ...........................................3, 4, 6, 23

Health Care Quality Improvement Act (HCQIA) ........................................................19, 21

Tex. Civ. Prac. & Rem. Code § 27.001(7)............................................................... *passim*

Tex. Civ. Prac. & Rem. Code § 27.002 ..............................................................................6

Tex. Civ. Prac. & Rem. Code § 27.003 ..........................................................................4, 7

Tex. Civ. Prac. & Rem. Code § 27.003(c)..........................................................................8

Tex. Civ. Prac. & Rem. Code § 27.005(b)(1) ......................................................... *passim*

Tex. Civ. Prac. & Rem. Code § 27.006(a) ........................................................8

Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) .............................................24, 25

Tex. Civ. Prac. & Rem. Code § 27.011(b)........................................................9

Tex. Civ. Prac. & Rem. Code § 51.014(b)........................................................4

Tex. Health & Safety Code § 161.033 ............................................................19

Tex. Labor Code § 21.254 ........................................................................23, 24

Tex. Occ. Code 160.010(b) ...........................................................................19

Tex. Occ. Code § 151.001 *et seq.* ............................................................16, 18

Tex. Occ. Code § 151.002(7) ........................................................................21

Tex. Occ. Code § 152.001(a) .........................................................................17

Tex. Occ. Code § 160.001 *et seq.* ............................................................16, 18

Tex. Occ. Code § 160.010 .............................................................................16

Tex. Occ. Code § 160.010(b) .........................................................................18

Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.* ...................1, 15

Texas Civil Practices and Remedies Code § 27.006(b) .....................................8

Texas Commission on Human Rights Act, Tex. Labor Code § 21.001 *et seq.* ("TCHRA")......................................................................................... *passim*

Texas Health and Safety Code § 161.031(a) ....................................................20

Texas Occupations Code § 151.002....................................................................20

Texas Occupations Code § 151.002(8) .............................................................20

**Other Authorities**

45 C.F.R. § 60.1 *et seq.*...................................................................................17

*Agency Overview,* Texas Medical Board, http://www.tmb.state.tx.us/page/agency (last visited Aug. 4, 2017)...................................................................................17

Federal Rule of Civil Procedure 12(b)(1) .......................................................22

40265498v.6

## SUMMARY AND STATEMENT OF THE ISSUES

The Texas Citizens Participation Act (**"TCPA"**) [1] is an "anti-SLAPP" ("Strategic Lawsuits Against Public Participation") statute which provides a means for expedited dismissal of certain types of claims in order to encourage and safeguard the constitutional rights of persons to petition, speak freely, and associate freely.  The TCPA applies to each claim Plaintiff Samia Khalil, M.D. (**"Dr. Khalil"**) makes against Memorial Hermann in this suit because those claims, on their face, relate to protected communications about Dr. Khalil's ability to practice medicine, amongst other protected activity.  Memorial Hermann's (and others') communications at the core of this lawsuit address *precisely* what the TCPA protects, including, crucially, matters of public concern related to "health or safety."

In Dr. Khalil's *first* lawsuit against Memorial Hermann—a suit based on the same underlying facts as this lawsuit—the Houston First District Court of Appeals squarely held that Dr. Khalil's allegations were subject to dismissal (and must be dismissed) under the TCPA,[2] and this Court should do the same.  Since this Motion demonstrates the clear fact that Dr. Khalil's claims (which are based on the same facts as her first suit) implicate the TCPA, the burden now shifts to Dr. Khalil to establish "by clear and specific evidence a prima facie case for each essential element of [her] claim[s]."  The TCPA mandates dismissal of every claim for which Dr. Khalil fails to provide such evidence.  And even if she does come forward with such evidence, the TCPA nevertheless requires dismissal here because Memorial Hermann has proven one or more valid defenses, specifically: (1) Memorial Hermann is statutorily immune from suit because all communications and actions at issue which could potentially be attributed to Memorial Hermann occurred within the course and scope of medical peer review and in the

---

[1] Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.*

[2] *Mem'l Hermann Health Sys. v. Khalil*, 01-16-00512-CV, 2017 WL 3389645 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, no pet. h.) (**"Khalil I"**).

scope of the functions of medical committees and medical peer review committees, (2) Dr. Khalil never named Memorial Hermann in any charge filed with any commission and therefore failed to exhaust her administrative remedies, and (3) Dr. Khalil failed to bring her claims within the statutorily-mandated 60-day time period.

Because dismissal of Dr. Khalil's claims is warranted, the TCPA also requires an award of "court costs, reasonable attorney's fees, and other expenses incurred in defending against Dr. Khalil's claims, as well as sanctions in an amount that "the court determines sufficient to deter [Dr. Khalil] from bringing similar actions."

## RELEVANT FACTS AND PROCEEDINGS

Long before filing this lawsuit, Dr. Khalil filed her *first* set of claims against Memorial Hermann.  *See Mem'l Hermann Health Sys. v. Khalil*, 01-16-00512-CV, 2017 WL 3389645 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, no pet. h,) (**"*Khalil I*"**) (attached hereto as **Ex. A**); Pl.'s Fourth Am. Pet., *Khalil v. Memorial Hermann Health System et al.*, Cause No. 2015-77483, 334th Judicial District, Harris County, Texas (**"*Khalil I* Petition"**) (attached hereto as **Ex. B**).[3] Packaged at that point principally as a variety of business torts claims, the facts Dr. Khalil alleged in *Khalil I* are substantially ***identical*** with respect to Memorial Hermann to the facts she alleges here; indeed, most of Dr. Khalil's allegations before this court were copied and pasted verbatim from the *Khalil I* Petition.  *Compare generally id.*, *with* Dkt. 1-5, Plaintiff's Original Petition (**"Petition"**); *compare Khalil I* Pet. ¶¶ 13, 19, 20, 21, 22, 24, 25, 26, 29, 30, 31, 32, *with* Pet. ¶¶ 8, 9, 11, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 31; *see also* **Appendix 1**, attached

---

[3] For ease of access and reference, Exhibit B is the *Khalil I* Petition (with exhibits) excerpted from the Clerk's Record on appeal in *Khalil I*, so its pages are bates stamped; this Motion pin cites Exhibit B with reference to these bates numbers (e.g., "CR 845" is the first page of the *Khalil I* Petition).  By attaching Dr. Khalil's pleading and exhibits here, Memorial Hermann does not concede the accuracy, authenticity, or the propriety of any of these documents or any of the allegations made therein.  Rather, Memorial Hermann incorporates them only as—and only for the limited purposes—specifically cited to herein, namely, the fact that Dr. Khalil made the allegations and attached and referenced the documents.

hereto (reciting the relevant factual allegations in the Petition and citing to the corresponding allegations in the *Khalil I* Petition).  Memorial Hermann moved under the TCPA in *Khalil I* to dismiss Dr. Khalil's business torts claims.  *See Khalil I*, 2017 WL 3389645, at *1.  Although the trial court granted that motion, it inadvertently did so too late (so the motion was denied by operation of law on June 6, 2016), and Memorial Hermann appealed.  *Id.* at *3.

In the meantime, based on the same facts alleged in *Khalil I*, Dr. Khalil filed charges of discrimination with the Equal Employment Opportunity Commission (**"EEOC"**) and Texas Workforce Commission (**"TWC"**).  Dkt. 8-1; Dkt. 8-3.  Her charges alleged that the ***other*** defendant in this case, "UTH McGovern Medical School" (**"UTH"**), was the "Employer . . . [she] Believe[s] Discriminated Against [her]"; her charges did not name Memorial Hermann.  Dkt. 8-3; Dkt. 8-1.  Dr. Khalil received her Right to Sue Letters from the TWC and EEOC (naming only UTH and not Memorial Hermann) on December 30, 2016 and February 1, 2017, respectively. Dkt. 8-2. Accordingly, short but mandatory limitations periods were fast approaching for any claims Dr. Khalil might make under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (**"ADEA"**), Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* (**"Title VII"**), and Texas Commission on Human Rights Act, Tex. Labor Code § 21.001 *et seq.* (**"TCHRA"**) (collectively, the **"Employment Statutes"**).

In a thorough and well-reasoned opinion delivered on March 28, 2017—and again on August 8, 2017 in an opinion on rehearing—the Houston First District Court of Appeals held in Memorial Hermann's favor, agreeing that the TCPA mandated dismissal of each of Dr. Khalil's claims at issue.  *Khalil I*, 2017 WL 3389645, at *1, 18.[4]  After the appellate court's first decision,

---

[4] Other claims remain pending in that case against Memorial Hermann and three other defendants.

Dr. Khalil filed a motion for rehearing on April 26, 2017,[5] so no mandate issued and all trial-level proceedings remained stayed by statute.[6]

Despite the mandatory limitations periods for any claims she might make under the Employment Statutes, at no point did Dr. Khalil move to lift the automatic stay in *Khalil I* to add any such claims or any new defendant.  Rather—in an obvious quest to find a more friendly ear for her newly-ripe but quickly expiring claims under the Employment Statutes—Dr. Khalil filed this as a separate suit in state court on May 5, 2017.  *See* Pet.  In this suit, Dr. Khalil alleges substantially identical facts as she did in *Khalil I* with respect to Memorial Hermann—but repackages those allegations as claims for age discrimination and retaliation under the Employment Statutes—and adds her former employer UTH as a Defendant.

Dr. Khalil's Petition is hopelessly vague and imprecise.  For instance, her two cause-of-action sections refer only to a "Defendant" (singular) without alleging **anything** against (both) "Defendants" or either individual Defendant. Pet. ¶¶ 35-46.  Also, Dr. Khalil fails to articulate which causes of action she makes under which of the three Employment Statutes: while her "AGE DISCRIMINATION" section cites the TCHRA and Title VII and her "RETALIATION" section cites the TCHRA, her lone reference to the ADEA resides only in her "FACTS" section. *Id.* ¶¶ 34-46.  Further, it does not appear that Dr. Khalil attempts to make a "retaliation" claim against Memorial Hermann, particularly because she alleges that UTH—not Memorial Hermann—was her employer ("[Dr. Khalil] was **employed . . . at [UTH]**"), and—of her mere four conclusory references to retaliation—she specifies two as to UTH ("**UTH** was retaliating against her"; "**UTH** retaliated against Dr. Khalil") and two as to an unidentified (singular)

---

[5] The Houston First District Court of Appeals ordered briefing on Dr. Khalil's motion for rehearing; it ultimately denied that motion but withdrew and replaced its initial opinion. *See* Ex. A.
[6] An interlocutory appeal of a denial of a motion to dismiss under section 27.003 of TCPA "stays the commencement of a trial in the trial court pending resolution of the appeal" and "also stays all other proceedings in the trial court pending resolution of that appeal." Tex. Civ. Prac. & Rem. Code § 51.014(b).

4

"Defendant" ("***Defendant*** engaged in . . . in retaliation"; "***Defendant's*** actions [were] in retaliation").  *Id.* ¶¶ 7, 30, 34, 45-46 (emphasis added).  Nevertheless, out of an abundance of caution (and only for purposes of this Motion, without conceding the validity of anything Dr. Khalil pled), Memorial Hermann construes the Petition in the broadest possible manner, i.e., as Dr. Khalil making "retaliation" ***and*** "age discrimination" claims under ***each*** of the three Employment Statutes against ***both*** Defendants.  Regardless, despite being exceptionally ambiguous in essentially every other respect, the Federal Complaint is crystal clear on the one thing that matters for purposes of this Motion: Dr. Khalil's factual allegations concerning Memorial Hermann (both here and in *Khalil I*)—and therefore ***any and every claim*** she could make ***based on those allegations***—are directly related to communications made in connection with a matter of public concern, most particularly health and safety.  Indeed, all of those communications concern Dr. Khalil's provision of medical services and skills as a physician.  Dr. Khalil's claims are therefore subject to dismissal under the TCPA.

ARGUMENT AND AUTHORITIES

I.   **Dr. Khalil's claims against Memorial Hermann are subject to dismissal under the TCPA because those claims are based on, related to, or in response to Memorial Hermann's exercise of its constitutional rights to free speech, to petition, and to association.**

   A.   **Although it is a state law, the TCPA framework applies in federal court.**

   "A federal court exercising supplemental jurisdiction over state law claims must apply the substantive law of the state in which it sits."  *Hernandez v. Baylor Univ.*, 6:16-CV-69-RP, 2017 WL 1322262, at *9 (W.D. Tex. Apr. 7, 2017).[7]  This Court has federal question and supplemental jurisdiction of Dr. Khalil's claims.  *See* Dkt. 1.  The Southern District of Texas recently held that anti-SLAPP statutes "such as the TCPA are enforceable in federal courts"

---

[7] Citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) and *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989).

5

because, although "[t]he TCPA is procedural in that it has specific time constraints, places a stay on discovery, and requires an expedited decision with an accelerated appellate process, . . . these procedural features are designed to prevent substantive consequences—the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit . . . ." *Williams v. Cordillera Commc'ns, Inc.*, 2:13-CV-124, 2014 WL 2611746, at *1-2 (S.D. Tex. June 11, 2014).[8] Furthermore, the TCPA applies to Dr. Khalil's state-law claims as well as her federal claims. *See, e.g.*, *Haynes v. Crenshaw*, 166 F. Supp. 3d 773, 777-78 (E.D. Tex. 2016) (applying the TCPA to dismiss both state and federal [RICO and conspiracy] claims); *Rivers v. Johnson Custodial Home, Inc.*, A-14-CA-484-SS, 2014 WL 4199540, at *1-2 (W.D. Tex. Aug. 22, 2014) (analyzing a TCPA motion to dismiss as equally applicable to state and federal [Title VII gender discrimination] claims, but denying the motion on substantive grounds, i.e., that the statements did not relate to matters of public concern).[9]

**B.    The TCPA provides the framework for dismissal of Dr. Khalil's claims.**

The TCPA, embodied in Chapter 27 of the Texas Civil Practice and Remedies Code, is an Anti-SLAPP statute enacted to protect those "who . . . speak on matters of public concern from retaliatory lawsuits [seeking] to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015).[10]  Its express purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, [and] associate freely." Tex. Civ. Prac. & Rem. Code § 27.002.

---

[8] *See also, e.g.*, *Cuba v. Pylant*, 814 F.3d 701, 706 n.6 (5th Cir. 2016) (applying the TCPA); *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 746 (5th Cir. 2014) (same); *Banik v. Tamez*, 7:16-CV-462, 2017 WL 1228498, at *4 (S.D. Tex. Apr. 4, 2017) (same); *Allen v. Heath*, 6:16-CV-51 MHS-JDL, 2016 WL 7971294, at *3 (E.D. Tex. May 6, 2016) ("While the TCPA provides a procedural mechanism for early dismissal, it ultimately provides a basis for dismissal that is inextricably tied to the substantive nature of Plaintiff's claims. . . . [The TCPA] is functionally substantive and does not conflict with the Federal Rules of Civil Procedure by simply providing a basis for dismissal of certain claims."), *report and recomm. adopted*, 6:16-CV-51, 2016 WL 3033561 (E.D. Tex. May 27, 2016).

[9] *But see NCDR LLC v. Mauze & Bagby, PLLC*, CV L-12-36, 2012 WL 12871954, at *2 (S.D. Tex. Oct. 5, 2012) ("The TCPA does not apply to Kool Smiles' federal claims because of the Supremacy Clause of the United States Constitution."). This particular issue, however, was not appealed and the Fifth Circuit made no comment. *See NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 746 (5th Cir. 2014).

[10] Citing Tex. Civ. Prac. & Rem. Code § 27.001-.011; *see also id.* at 586 (citing House Comm. on Judiciary & Civil Jurisprudence, Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. (2011)).

6

The TCPA effectuates this protection by providing "a special motion for an expedited consideration of any suit that appears to stifle the defendant's communication on a matter of public concern." *In re Lipsky*, 460 S.W.3d at 586 (citing Tex. Civ. Prac. & Rem. Code § 27.003). Specifically, "[i]f a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." Tex. Civ. Prac. & Rem. Code § 27.003.[11]

Courts analyze TCPA motions to dismiss under a special and expedited two-part burden-shifting framework. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017). *First*, the defendant must show that the plaintiff's claim "is based on, relates to, or are in response to [the defendant]'s exercise of: (1) the right of free speech; (2) the right to petition; [and/]or (3) the right of association." Tex. Civ. Prac. & Rem. Code § 27.005(b)(1). The defendant must make this showing "by a preponderance of evidence," *id.*, and may do so merely by relying on the plaintiff's pleadings, even without offering them as judicial admissions, and even if the defendant denies the plaintiff's allegations, *Hersh v. Tatum*, ___ S.W.3d ___, 2017 WL 2839873, at *4 (Tex. June 30, 2017) ("[T]he defendant need show no more.").[12]

*Second*, if the defendant has made this showing, "a court *shall* dismiss [the plaintiff's] legal action" unless the plaintiff "establishes by *clear and specific evidence* a *prima facie case* for each essential element of the claim[s] in question." Tex. Civ. Prac. & Rem. Code § 27.005(b)(1), (c) (emphasis added).[13]  Courts give the words "clear and specific evidence" and

---

[11] A motion to dismiss filed pursuant to Chapter 27 of the Civil Practices and Remedies Code must be filed within 60 days from service of the plaintiff's original petition.  Tex. Civ. Prac. & Rem. Code § 27.003(b).  Dr. Khalil's served Memorial Hermann on June 15, 2017.  Dkt. 1-5 at 46.  Accordingly, Memorial Hermann's deadline for a TCPA motion to dismiss is August 14, 2017, and this motion is therefore timely.

[12] *See also Hicks v. Group & Pension Administrators, Inc.*, 473 S.W.3d 518, 526 (Tex. App.—Corpus Christi 2015, no pet.) ("The TCPA does not require a movant to present testimony or other evidence to satisfy the movant's evidentiary burden.").

[13] *See also In re Lipsky*, 460 S.W.3d at 586 ("In reviewing [a TCPA] motion, the trial court is directed to dismiss the suit unless 'clear and specific evidence' establishes the plaintiffs' 'prima facie case.'").

40265498v.6

"prima facie case" their ordinary meaning under the TCPA.[14]  Crucially, a plaintiff responding to

a TCPA motion cannot avoid dismissal by relying on the allegations in her complaint.[15]  Instead,

a plaintiff may avoid dismissal under the TCPA only by submitting "affidavits stating the facts

on which the [alleged] liability . . . is based."  Tex. Civ. Prac. & Rem. Code § 27.006(a).[16]  And

because the TCPA requires "clear and specific evidence," the Texas Supreme Court holds that

"general allegations [in affidavits] that merely recite the elements of a cause of action—will not

suffice."  *In re Lipsky*, 460 S.W.3d at 590-92 (requiring "pleadings and evidence" of the claim to

survive the TCPA, and holding that "[b]are, baseless opinions [in affidavits] do not create fact

questions, and neither are they a sufficient substitute for the clear and specific evidence required

to establish a prima facie case under the TCPA").[17]

---

[14] Under the TCPA, "[c]lear means free from obscurity or ambiguity, easily understood, free from doubt, or sure," while "[s]pecific means constituting or falling into a specifiable category, free from ambiguity, [] accurate," "explicit[,] or relating to a particular named thing.  *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.–Houston [1st Dist.] 2013, pet. denied) (internal quote marks and citations omitted); *see also In re Lipsky*, 460 S.W.3d at 590.  Similarly, courts also give the words "prima facie case" their "traditional legal meaning" under the TCPA: "prima facie case" refers to "evidence sufficient as a matter of law to establish a claim if it is not rebutted or contradicted," i.e., the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true."  *In re Lipsky*, 460 S.W.3d at 590.

[15] Indeed, the TCPA's requirement that a motion to dismiss be adjudicated with consideration given to "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based," necessarily means that pleadings cannot themselves be sufficient to defeat a TCPA motion; otherwise, plaintiffs could simply artfully plead out of their burden to "establish[] by clear and specific evidence a prima facie case for each essential element of the[ir] claim[s]."  *See* Tex. Civ. Prac. & Rem. Code §§ 27.005(c), 27.006(a); *cf. Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) ("Generally, pleadings are not evidence, even if sworn or verified."); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971).  Indeed, "[i]n response to a TCPA motion, a plaintiff should cite *evidence* to support each element of [her] claims."  *Haynes*, 166 F. Supp. 3d at 771 (emphasis added); *see also, e.g., Better Bus. Bureau of Metro. Dallas, Inc. v. Ward*, 401 S.W.3d 440, 445 (Tex. App.—Dallas 2013, pet. denied) (granting TCPA motion to dismiss because plaintiff "cited no evidence to support each element of his . . . claims").

[16] Upon filing of Memorial Hermann's instant Motion, all discovery, except as permitted by Texas Civil Practices and Remedies Code § 27.006(b), is suspended until the Court has ruled on the Motion.  *See* TEX. CIV. PRAC. & REM. § 27.003(c).  Federal courts apply this rule, too.  *See Charalambopoulos v. Grammer*, 3:14-CV-2424-D, 2015 WL 5165344, at *2 n.5 (N.D. Tex. Sept. 3, 2015) (noting that the court's denial "as moot" of a motion to stay discovery made pursuant to section 27.003(c) "because discovery *had already been stayed while the motion to dismiss was pending* and would remain stayed until the court entered a final decision on the remaining claims covered by the TCPA").  Under section 27.006(b), the court may allow limited discovery specific to the motion upon a party's motion or *sua sponte*, so long as a good-cause showing is made.  *Id.* at § 27.006(b).  Absent any motion and good-cause showing, the parties are limited to pleadings and any affidavits submitted.

[17] *See also id.* at 593 ("Opinions [in affidavits] must be based on demonstrable facts and a reasoned basis."); *id.* at 590 (stating that "pleadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific evidence' requirement," and holding that even with an affidavit, plaintiff

However, even if Dr. Khalil were to establish each element of her claims by clear and specific evidence, the "court **shall** [nevertheless] dismiss [Dr. Khalil's claims] if [Memorial Hermann] establishes by a preponderance of the evidence each essential element of a valid defense to [Dr. Khalil]'s claim[s]." Tex. Civ. Prac. & Rem. Code § 27.005(d) (emphasis added).

Finally, as an overarching principle in deciding motions to dismiss under the TCPA, the legislature instructs that courts construe the TPCA's provisions "liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b).

### C.   Dr. Khalil's claims against Memorial Hermann are subject to dismissal under the TCPA.

Dr. Khalil's claims against Memorial Hermann are subject to dismissal under the TCPA because, **based on Dr. Khalil's own pleadings**, her claims are "based on, relate[] to, or are in response to [Memorial Hermann]'s exercise of: (1) the right of free speech; (2) the right to petition; [and/] or (3) the right of association." *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)(1).

### 1.   Dr. Khalil's claims relate to Memorial Hermann's exercise of their right to free speech.

The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). The word "communication" includes both **public and private** communications and entails "any form or medium, including oral, visual, written, audiovisual, or electronic." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) ("*Whisenhunt II*"). And a "'[m]atter of public concern' includes an issue related to . . . **health or safety**." Tex. Civ. Prac. & Rem. Code § 27.001(7) (emphasis added). Moreover, "[t]he TCPA does not require that the statements specifically

---

failed to plead special damages with the requisite degree of specificity to survive a TCPA motion); *Fitzmaurice v. Jones*, 417 S.W.3d 627, 633 (Tex. App.—Houston [14th Dist.] 2013, no pet. h.) (petition's allegations were insufficient in the absence of evidence), *disapproved of on other grounds by In re Lipsky*, 460 S.W.3d at 587; *Walker v. Schion*, 420 S.W.3d 454, 458 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (affirming dismissal under the TCPA where, as a result of the trial court's striking of plaintiff's affidavit, "there is no evidence of other elements essential to the claim").

'mention' health [or] safety . . . , ***nor does it require more than a 'tangential relationship' to the same***." *ExxonMobil*, 512 S.W.3d at 900 (emphasis added).  Indeed, application of the TCPA is in no way limited to claims expressly requiring proof of a "communication"; "rather, TCPA applicability requires only that the defendant's statements are ***'in connection with' 'issue[s] related to' health [or] safety***."  *Id.* (citing Tex. Civ. Prac. & Rem. Code § 27.001(3), (7)) (emphasis added); *Haynes v. Crenshaw*, 166 F. Supp. 3d 764, 769 (E.D. Tex. 2016) ("[I]n deciding whether a claim 'relates to' a defendant's rights of free speech, application of the TCPA is not limited to a plaintiff's defamation claims, but other civil claims based on that defamation . . . ."), *report and recomm. adopted*, 166 F. Supp. 3d 773 (E.D. Tex. 2016).  Similarly, where a plaintiff alleges multiple communications, the TCPA applies as long as "***one*** [of the] statement[s] was a communication made in connection with a matter of public concern . . . ." *Khalil I*, 2017 WL 3389645, at *5 n.4 (citing *Whisenhunt II*, 462 S.W.3d at 510) (emphasis added).

As one would expect, the Texas Supreme Court expressly holds that under the TCPA, communications regarding "the provision of medical services by a health care professional constitutes a matter of public concern."  *Whisenhunt II*, 462 S.W.3d at 510.  Similarly, effective credentialing and peer review is clearly a matter of public concern,[18] and communications made in a professional medical peer-review process (which includes credentialing and recredentialing of physicians to a hospital medical staff)[19] necessarily implicate matters of public concern.

Here, Dr. Khalil alleges a variety of communications as forming the basis for her claims against Memorial Hermann.  *See* Pet. ¶¶ 8-33 (reciting the allegations detailed below); *id.* ¶ 34

---

[18] *See, e.g.*, 42 U.S.C. § 11101 (reciting United States Congressional findings that "[t]he increasing occurrence of medical malpractice and the need to improve the quality of medical care have become ***nationwide problems*** . . . [which] can be remedied through ***effective professional peer review***," such that "[t]here is an ***overriding national need*** to provide incentive and ***protection for physicians engaging in professional peer review***") (emphasis added).
[19] *See Memorial Hospital-The Woodlands v. McGown*, 927 S.W.2d 1, 4 (Tex. 1996).

("Based on the above, it is clear that UTH and Memorial Hermann violated Dr. Khalil's rights under the [ADEA] and [TCHRA]"); Appendix 1.  Each of those communications manifests far more than the requisite "tangential relationship" with health or safety (even though only *one* needs to in order to subject Dr. Khalil's claims to the TCPA, *see Khalil I*, 2017 WL 3389645, at *5 n.4 (citing *Whisenhunt II*, 462 S.W.3d at 510)).  Indeed, the connection is explicit.  Parsing through Dr. Khalil's rambling and unfocused narrative of alleged wrongs by a variety of parties, the factual allegations purporting to serve as the basis for her claims are, by her own admission, communications relating to patient safety, her provision of medical care, and peer review.  These include:

- Dr. Hagberg's communication to Dr. Khalil "that there were vague complaints to the hospital administration about her and that the hospital had asked her to implement a corrective action plan for [her] to follow," Pet. ¶ 8;

- "[t]he *Peer Review* Group['s] . . . evaluation of Dr. Khalil's Pediatric *Patient Safety* Checklist compliance data," wherein "the examiner . . . perceive[d] Dr. Khalil's approach for completing preoperative checklists as a cause for concern," *id.* ¶¶ 9-11 (emphasis added);

- the "responses provided to [Dr. Hagberg] by five nurses, five surgeons, and five anesthesiologists . . . about [Dr. Khalil] . . . *in her peer review*," wherein "the surveyors found two [patient] charts that they recommended for further evaluation," *id.* ¶¶ 12-13 (emphasis added);

- "Dr. Hagberg inform[ing] Dr. Khalil that she was being placed on 'administrative leave' . . . due to [Dr. Hagberg's] concerns about '*patient safety issues*,'" based on "the[] two charts" which were "recommended for further evaluation," *id.* ¶¶ 12-14 (emphasis added);

- "Dr. Hagberg and Monica Guidry, Director of Employee Assistance Programs, advis[ing] Dr. Khalil . . . that she needed to attend [training due to] instances of *Dr. Khalil's inability to provide safe, high quality patient care*, . . . with one of the expressed reasons [being] 'to assess the *ability for [Dr. Khalil] to practice with skill and safety*,'" *id.* ¶ 20 (emphasis added); *see also id.* ¶ 21 ("Memorial Hermann and UTH required Dr. Khalil to go to KSTAR or PACE for further evaluation of *issues regarding her professionalism and patient safety*.") (emphasis added);

- Dr. Farnie's November 19, 2015 letter to Dr. Khalil "advising her that her reappointment application had been tabled [because] [s]he had not completed the PACE program [because] . . . the Committee was ***gravely concerned about clinical patient safety, based on the patient charts***," *id.* ¶ 22 (emphasis added);

- Dr. McCarthy's letter to Dr. Khalil "that a committee had found that '***[Dr. Khalil's] clinical practice represents the potential of an imminent patient harm***," *id.* ¶ 23 (emphasis added);

- Dr. Farnie's alleged "threat[] to report the investigation to the National Practitioners Data Bank which would trigger a report to the Texas Medical Board" because "'aggregated information in [Dr. Khalil's] overall credentials file, to date, is disturbing and has led to the finding that ***[Dr. Khalil's] clinical practice represents the potential of imminent patient harm***,'" *id.* ¶ 23 (emphasis added).

To the extent any of these communications are even alleged to be attributable to Memorial Hermann (the Petition is quite unclear, and Memorial Hermann does not concede which, if any, of these communications are attributable to it), these communications nonetheless address Dr. Khalil's provision of, or ability to safely and competently provide, medical services (and also stems from Dr. Khalil's peer review and credentialing). These communications were no doubt "made in connection with a matter of public concern," and Dr. Khalil's claims arising from them are therefore subject to dismissal under the TCPA. The facts, analysis, and holdings in two recent cases— *Khalil I* and *Whisenhunt II*—are particularly instructive, if not directly controlling.

        a.    ***Khalil I* is dispositive: the facts Dr. Khalil alleges against Memorial Hermann implicate the TCPA.**

The analysis and holding in the Houston First District Court of Appeals' decision in *Khalil I* does not apply here simply because its operative facts are "analogous" to those in this lawsuit; it applies here because its operative facts are ***identical***. In a thorough and well-reasoned opinion, the Texas Court of Appeals in *Khalil I* held that "Memorial Hermann has met its initial burden of invoking the TCPA" based on Dr. Khalil's allegations of communications, including "a letter from Memorial Hermann's chief of staff . . . stat[ing] that Khalil's 'clinical practice

represents the potential of imminent patient harm,' which required that she be prohibited from engaging in clinical duties so as 'to promote patient safety.'" 2017 WL 3389645, at *6.  Of course, this "letter" is the exact same letter at the forefront of Dr. Khalil's Petition.[20]  Moreover, *Khalil I* determined that Dr. Khalil's claims are "based on statements made about her during Memorial Hermann's and UT Health's investigations into her competence, including privileged peer-review statements made by various committees."   *Khalil I*, 2017 WL 3389645, at *2. *Khalil I* therefore concluded that (1) "[these] Memorial Hermann communication[s] regarding Khalil's competence [were] made in connection with an issue related to health or safety, and thus, a matter of public concern," (2) Dr. Khalil's suit "was 'in response to'" these communications, and (3) "[a]ccordingly, Memorial Hermann has met its initial burden of invoking the TCPA." *Khalil I*, 2017 WL 3389645, at *6 (citing, e.g., Tex. Civ. Prac. & Rem. Code §§ § 27.001(3), (7)(A), .003(a), .005(b)).  This Court should reach the same conclusion, because no matter the label Dr. Khalil attaches, the underlying facts are the same.

The TCPA applies here by ***not only*** as a matter of substance, but also by virtue of collateral estoppel,[21] the law of the case,[22] and/or *stare decisis*[23] because *Khalil I*—in a fully

---

[20] *See* Pet. ¶¶ 23-24 ("James McCarthy, M.D., Chief of Staff at Memorial Hermann, wrote Dr. Khalil on December 8, 2015, again alleging that a committee had found that 'your clinical practice represents the potential of an imminent patient harm.'").

[21] "The doctrine of collateral estoppel or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues." *Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994); *see also B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293 (2015) ("[T]he determination of a question directly involved in one action is conclusive as to that question in a second suit.  The idea is straightforward: Once a court has decided an issue, it is forever settled as between the parties, thereby protecting against the expense and vexation attending multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent verdicts.  In short, a losing litigant deserves no rematch after a defeat fairly suffered.") (internal citations, brackets, and quote marks omitted).

When a party in federal court is asserting collateral estoppel regarding a state court judgment, the court applies the collateral estoppel law of that state.  *Matter of Pancake*, 106 F.3d 1242, 1244 (5th Cir. 1997).  Under Texas law, "[a] party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."  *Sysco*, 890 S.W.2d at 801.  With respect to the first factor, "for purposes of collateral estoppel there need not necessarily be a final judgment on the merits. Instead, the test for finality is whether the conclusion in question is procedurally definite.

40265498v.6

briefed opinion—*already decided* the applicability of the TCPA to claims against Memorial Hermann arising from the facts Dr. Khalil alleges here, *see Khalil I*, 2017 WL 3389645; *see also* Appendix 1 (comparing the Petition's factual allegations to those in the *Khalil I* Petition).   At bottom, it is already settled law that any claims arising from the facts Dr. Khalil alleges against Memorial Hermann here are "based on, relates to, or is in response to" Memorial Hermann's exercise of the right of free speech.   Regardless, Memorial Hermann has once again met its burden to show that they are.

> **b.    Under *Whisenhunt II*, Dr. Khalil's claims are subject to dismissal under the TCPA.**

In *Whisenhunt II*, a nurse anesthetist who worked as an independent contractor at a medical facility sued the facility's administrators for allegedly making false statements about him in private emails, including that he endangered patients, failed to appropriately document his medical services, administered the wrong narcotic during a surgery, and engaged in inappropriate

---

The factors to be considered in answering this question include whether the parties were fully heard, whether the court supported its decision with a reasoned opinion and whether the decision was subject to appeal or was in fact reviewed on appeal." *City of San Antonio v. Cortes*, 468 S.W.3d 580, 586 (Tex. App.—San Antonio 2015, pet. denied) (internal citations, brackets, and quote marks omitted).   Furthermore, the doctrine may apply "even though the subsequent action is based upon a different cause of action [because it] does not require that all the issues in the subsequent action be the same as those in the prior suit. It merely precludes the same issues from being reurged." *Wilhite v. Adams*, 640 S.W.2d 875, 876 (Tex. 1982).

[22] Because this lawsuit is a continuation of *Khalil I*, the law of the case doctrine compels the same result here in the TCPA analysis as the court reached in *Khalil I*. *See, e.g., Totz v. Owens*, 01-16-00753-CV, 2017 WL 2178890, at *4 (Tex. App.—Houston [1st Dist.] May 18, 2017, no pet. h.) ("[The law of the case doctrine] it applies if the issues or the facts in the successive appeal are substantially the same as those involved in the first proceeding or so nearly the same that they do not materially affect the legal issues involved in the successive appeal."); *Yazdchi v. San Antonio Fed. Credit Union*, 01-07-00189-CV, 2009 WL 417299, at *4-5 (Tex. App.—Houston [1st Dist.] Feb. 19, 2009, no pet.) (concluding "that [the] 'law of the case' doctrine forecloses our reconsideration of this same issue," even though "the matter before us is not a subsequent appeal in 'the same case'") (citing *Ware v. State*, 736 S.W.2d 700, 701 (Tex. Crim. App. 1987)).

[23] Even if this lawsuit was not a continuation of *Khalil I*, the Houston First Court of Appeals' decision in *Khalil I* is the ultimate "all fours" case and must be followed under principles of *stare decisis*. *See, e.g., Edwards v. Kaye*, 9 S.W.3d 310, 313-14 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("Stare decisis only applies if the facts on which the prior case is founded are substantially the same as those in the subsequent suit."); *McKenzie Const. Co. v. City of San Antonio*, 50 S.W.2d 349, 353 (Tex. Civ. App.—San Antonio 1932, writ ref'd) ("The doctrine of 'stare decisis' is properly applied only when the previous decision relied upon as controlling was founded upon a certain state of facts substantially the same as appears in the case in which the doctrine is invoked."); *Souter v. State*, 05-91-00836-CR, 1995 WL 398446, at *3 (Tex. App.—Dallas July 7, 1995, no pet.) ("Stare decisis controls if it makes sense or follows logical reasoning.").

behavior.  *See Whisenhunt II*, 462 S.W.3d at 508-10.[24]  The Texas Supreme Court held that these were statements regarding the provision of medical services by a health care professional and thus constituted a matter of public concern.  *Id.* at 510.[25]

This case is no different.  Just like the plaintiff in *Whisenhunt II*, Dr. Khalil alleges Memorial Hermann's (and others') communications of their concerns over, e.g., Dr. Khalil's "inability to provide safe, high quality patient care," "issues regarding her professionalism and patient safety," and "the potential of an imminent patient harm."  Pet. ¶¶ 20, 21, 23.  Dr. Khalil labels these communications "discrimination," which she alleges "was sufficiently pervasive to alter the conditions of [her] employment and create a working environment which was intimidating, [sic] and insulting . . . ."  *Id.* ¶ 36.  Yet these are precisely the kinds of communications that, according to the Texas Supreme Court, involve "the provision of medical services by a health care professional" and are therefore "made in connection with a matter of public concern" and subject to dismissal under the TCPA.  *Whisenhunt II*, 462 S.W.3d at 510.  Accordingly, the communications at issue here are also subject to dismissal under the TCPA.

In conclusion, because Dr. Khalil's claims explicitly raise issues related to health and safety, because they involve medical peer review and credentialing (a matter of state and national public concern), and because they involve communications addressing the provision of medical services by a health care professional, those claims are made in connection with a matter of public concern and are based on, relate to, and are in response to Memorial Hermann's exercise of its right to free speech.  *See* Tex. Civ. Prac. & Rem. Code §§ 27.001(3), (7), 27.005(b).  The TCPA therefore applies, and Dr. Khalil's claims should be dismissed.

---

[24] *See also Whisenhunt v. Lippincott*, 474 S.W.3d 30, 36-38 (Tex. App.—Texarkana 2015, no pet.) ("*Whisenhunt III*") (outlining in greater detail the contents of the email communications).

[25] *See also ExxonMobil*, 512 S.W.3d at 900 ("[*Whisenhunt II*] held that communications about a private employment matter in the context of providing medical services related to health and safety, and, therefore, the communications qualified as a matter of public concern under the TCPA.").

**2. Dr. Khalil's claims relate to Memorial Hermann's exercise of their right to petition.**

The TCPA defines the "[e]xercise of the right to petition" as, *inter alia*, "a communication in connection with an issue under consideration or review . . . or that is reasonably likely to encourage consideration or review of an issue by a . . . governmental body or in another governmental or official proceeding," as well as "a communication in or pertaining to" "an official proceeding, other than a judicial proceeding, to administer the law," or a "proceeding before a department . . . or a subdivision of the state or federal government." Tex. Civ. Prac. & Rem. Code § 27.001(4).

Holdings in other states with similar anti-SLAPP statutes apply those statutes to communications made in the course of medical peer review because peer review findings are subject to administrative review by a governmental agency. *See, e.g.*, *Kibler v. Northern Inyo County Local Hospital Dist.*, 138 P.3d 193, 196-200 (Cal. 2006) (peer review proceedings are protected under the anti-SLAPP statute to dispel reluctance and promote participation in peer review). This reasoning is consistent with the Texas' treatment of medical peer reviews. *See, e.g.*, Tex. Occ. Code § 151.001 *et seq.*; *id.* § 160.001 *et seq.*; *infra* Section D1.

Here, holding that the communications at issue fall within the scope of Memorial Hermann's exercise of its right to petition would harmonize with the Texas Legislature's desire to promote participation and protect peer review participants from harassing lawsuits under the Texas Medical Practice Act's ("TMPA") immunity provision. *See* Tex. Occ. Code § 160.010. Indeed, the community as a whole would suffer if hospitals, physicians, and other medical professionals forego participation in peer reviews for fear of facing suits like Dr. Khalil's.

Reporting the results of a peer review to the Texas Medical Board also constitutes protected petitioning. *See* Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)-(C). Dr. Khalil alleges

16

that "Dr. Farnie threatened to report the investigation to the National Practitioners Data Bank which would trigger a report to the Texas Medical Board."  Pet. ¶ 23.  Dr. Khalil's Petition, on its face, therefore implicates the right to petition, as she complains about a "threat[]" of reports being made to the Texas Medical Board, a state agency tasked with licensing and regulating Texas physicians,[26] and the National Practitioners Data Bank, a federal agency tasked with tracking adverse licensure or certification actions against helath care practitioners.[27]  It clearly relates to the peer review process and is "a communication . . . that is reasonably likely to encourage consideration or review of an issue by a . . . governmental body."  *See* Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(iii), (C); *cf., e.g.*, *Attaya v. Shoukfeh*, 962 S.W.2d 237, 239-40 (Tex. App.—Amarillo 1998, pet. denied).  Dr. Khalil's claims are therefore related to Memorial Hermann's exercise of their right to petition and subject to dismissal under the TCPA.

### 3. Dr. Khalil's claims relate to Memorial Hermann's exercise of their right of association.

The TCPA defines the "[e]xercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."  Tex. Civ. Prac. & Rem. Code § 27.001(2).  Dr. Khalil's own allegations demonstrate that the very core of her complaints is with respect to exactly these sorts of communications.  Her allegations pertain directly to individuals—physicians and healthcare administrators—joining together to promote and pursue a crucially important common (and public) interest in the quality of healthcare, evaluating and discussing Dr. Khalil's medical practice and abilities.  Indeed, the Petition is replete with references to Memorial Hermann's alleged actions occurring within the "peer review" process.  *See, e.g.*, Pet. ¶¶ 9, 12, 13, 15; *see*

---

[26] *See* Tex. Occ. Code § 152.001(a) ("The Texas Medical Board is an agency of the executive branch of state government with the power to regulate the practice of medicine."); *Agency Overview,* Texas Medical Board, http://www.tmb.state.tx.us/page/agency (last visited Aug. 4, 2017).

[27] *See* 42 U.S.C. § 11133; 45 C.F.R. § 60.1 *et seq.*

*also Khalil I*, 2017 WL 3389645, at *2 (observing that Dr. Khalil's claims are "based on statements made about her during Memorial Hermann's and UT Health's investigations into her competence, including privileged peer-review statements made by various committees.").  By its very nature—evaluating and commutating with others regarding healthcare performance—the peer review process fits squarely within the TCPA's definition of the right of association.  *See* Tex. Occ. Code § 151.001 *et seq.*; *id.* § 160.001 *et seq.*; *see also infra* Section D1.  Dr. Khalil's claims are therefore subject to dismissal under the TCPA.

> **D.    Even if Dr. Khalil meets her prima facie burden, her claims must still be dismissed because Memorial Hermann has established valid defenses.**

Because Memorial Hermann proved that Dr. Khalil's claims implicated the TCPA, Dr. Khalil can avoid dismissal only by establishing each element of her claims by "clear and specific evidence."  *See* Tex. Civ. Prac. & Rem. Code 27.005(c).  But even if she does, "the court ***shall dismiss*** [her claims] if the [Memorial Hermann] establishes by a preponderance of the evidence each essential element of a valid defense to [her] claim[s]."  Tex. Civ. Prac. & Rem. Code § 27.005(d) (emphasis added).  Here, Memorial Hermann establishes three valid defenses: (1) the communications Dr. Khalil complains of cannot serve the basis of any claim because they are peer review communications subject to state and federal statutory immunity, (2) Dr. Khalil never named Memorial Hermann in any charge filed with any commission and therefore failed to exhaust her administrative remedies, and (3) Dr. Khalil failed to bring her claims within the statutorily-mandated 60-day time period.

> **1.    Memorial Hermann's communications are protected as peer review communications.**

The Texas medical peer-review immunity statute provides that "[a] cause of action does not accrue . . . from ***any*** act, statement, determination or recommendation made, or act reported, without malice, ***in the course of medical peer review***."  Tex. Occ. Code § 160.010(b) (providing

"immun[ity] from any civil liability") (emphasis added).[28]  Elsewhere in Texas law, "[a] member

of a medical committee is not liable for damages to a person for an action taken or

recommendation made within the scope of the functions of the committee if the committee

member acts without malice and in the reasonable belief that the action or recommendation is

warranted by the facts known to the committee member."  Tex. Health & Safety Code § 161.033.

Finally, the federal Health Care Quality Improvement Act (HCQIA) provides immunities to all

"professional review activities" related to "professional review actions" taken by "professional

review bodies," such as Memorial Hermann and its medical peer review committees.  *See* 42

U.S.C. §§ 11101, 11151.   Federal law also provides immunity to any person providing

information regarding the competence or professional conduct of a physician to "professional

review bodies," unless the party bringing the action can show that "such information is false and

the person providing it knew that such information was false."  42 U.S.C. § 11111(a)(2).

      The court in C*hing v. Methodist Children's Hospital* succinctly explained why hospitals

are immune from liability arising out of peer-review activities:

> [P]ublic policy encourages hospitals to conduct medical peer reviews of
> physicians.  *See* 42 U.S.C. § 11101(3) and (5). Accordingly, in conducting
> periodic peer reviews of its medical staff, *a hospital is entitled to statutory
> immunities from civil liability under HCQIA, 42 U.S.C. § 11111(a) and section
> 160.010 of the Occupation Code*.[29]

      These immunity defenses are *presumed* to apply to Memorial Hermann and its medical

peer review committees/professional review bodies unless the party bringing the claims presents

evidence rebutting that presumption.  *See* 42 U.S.C. §§ 11112(a), 11151(9)-(10); Tex. Occ. Code

160.010(b); *Maewal v. Adventist Health Sys.*, 868 S.W.2d 886, 893 (Tex. App.—Fort Worth

---

[28] *Kinnard v. United Reg'l Health Care Sys.*, 194 S.W.3d 54, 57 (Tex. App.—Fort Worth 2006, pet. denied) ("These statutory immunity provisions protect both actions or statements taken in the course of peer review and the impact or effect of those actions.").

[29] 134 S.W.3d 235, 241 (Tex. App.—Amarillo 2003, pet denied) (emphasis added).

1993, writ denied); *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 640-41 (Tex. App.—Houston [1st Dist] 2002, no pet.) (citing *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 509 (Tex. 1997)).  There is also a presumption that Memorial Hermann acted without malice, so Dr. Khalil must prove otherwise to rebut the presumption of immunity under the Texas medical committee and medical peer review committee statutes.  *See Maewal*, 868 S.W.2d at 893 ("Accordingly, we hold a presumption of absence of malice applies to medical peer review committee actions.").

Dr. Khalil's allegations demonstrate that all communications and actions that could potentially be attributed to Memorial Hermann occurred within the scope of the functions of its medical committees, as that term is defined in Texas Health and Safety Code § 161.031(a), and its medical peer review committees, as that term is defined in Texas Occupations Code § 151.002(8), and in the course and scope of medical peer review, as that term is defined in Texas Occupations Code § 151.002.  These committees specifically include Memorial Hermann itself, the Medical Staff Quality Review Committee ("MSQRC"), the Memorial Hermann Memorial City Medical Center Credentials Committee, and the Memorial City Medical Executive Committee and its members.[30]  The records Dr. Khalil attached to her *Khalil I* Petition also establish that Memorial Hermann's actions and communications took place as part of medical peer review by medical peer review committees.  *See* Ex. B at CR 1077-78, 1080-81, 1086-87, 1116, 1118, 1120, 1124, 1240-41.  And *Khalil I* already determined that the peer review proceedings at issue there (and now here) are entitled to protection under the TCPA.  *See Khalil I*, 2017 WL 3389645, at *6-12; *see also id.* at *2 (observing that Dr. Khalil's claims are

---

[30] *See* Ex. B at CR 1077-78 (MSQRC "is the physician peer-review body responsible for evaluation of physician performance in issues regarding patient care."), *id.* at CR 1080-81 (Credentials Committee communication identified as "PRIVILEGED AND CONFIDENTIAL RECORDS AND PROCEEDINGS OF A MEDICAL PEER REVIEW COMMITTEE"), *id.* at CR 1086-87 (MEC communication identified as peer review committee document); *see also id.* at CR 905-19 (Medical Staff Bylaws identifying MEC and Credentials Committee as tasked with evaluating a physician's competence and professional conduct in the credentialing process).

"based on statements made about her during Memorial Hermann's and UT Health's investigations into her competence, including privileged peer-review statements made by various committees"). These same entities are also properly defined as "professional review bodies" under federal law, too. *See* 42 U.S.C. § 11151(11).[31]

None of this is (or can be) disputed. Indeed, Dr. Khalil concedes that all of Memorial Hermann's alleged communications and acts at issue relate to the decisions of the hospital's medical peer review committees/professional review bodies in the credentialing process and to evaluate Dr. Khalil's health care services, including her qualifications and professional conduct. *See, e.g.*, Pet. ¶¶ 9, 12, 13, 15 (conceding a "peer review" process). Those communications and acts involve evaluation of the complaints against her, the accuracy of her diagnoses, and the quality of her care. *Id.* These alleged actions and communications fall squarely within the definitions of "peer review" and "professional review activities" that are related to a "professional review action." *See* Tex. Occ. Code § 151.002(7); 42 U.S.C. § 11151(10); *see also Kinnard v. United Reg'l Health Care Sys.*, 194 S.W.3d 54, 57 (Tex. App.—Fort Worth 2006, pet. denied) ("[The] credentialing process . . . inherently requires peer review."). Furthermore, it is of no moment that Dr. Khalil complains of what she perceives as irregularities in the process or that it did not comport with the bylaws.[32]

In conclusion, these three immunity statutes apply to Dr. Khalil's claims because her claims arise out of facilitation and participation in the peer review (including credentialing)

---

[31] "The term 'professional review body' means a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity." 42 U.S.C. § 11151(11).

[32] *See Dallas County Med. Soc'y v. Ubinas Brache*, 68 S.W.3d 31, 39 (Tex. App.—Dallas 2001) (finding decision to expel doctor from physician organization was medical a "peer review determination" protected by immunity, even if the committee making the expulsion decision did not follow operating rules and did not provide due process and fair hearing); *Poliner v. Texas Health Sys.*, 537 F.3d 368, 380-81 (5th Cir. 2008) ("HCQIA immunity is not coextensive with compliance with an individual hospital's bylaws. Rather, the statute imposes a uniform set of national standards. Provided that a peer review action as defined by the statute complies with those standards, a failure to comply with hospital bylaws does not defeat a peer reviewer's right to HCQIA immunity from damages.").

21

process.  Memorial Hermann is therefore entitled to statutory presumptions of immunity under state and federal law, such that Dr. Khalil now bears the burden of presenting evidence to overcome those presumptions.  Memorial Hermann has appropriately pled and established by a preponderance of the evidence the three foregoing valid defenses, each of which provides immunity against all of Dr. Khalil's claims.  Accordingly, Memorial Hermann remains entitled to dismissal of her claims under the TCPA.

> **2.      Dr. Khalil's claims are barred because she did not name Memorial Hermann in any charge filed with any commission and therefore failed to exhaust her administrative remedies.**

A plaintiff may bring an action under the ADEA "*against the respondent named in the charge* within 90 days after the date of the receipt of such notice."  29 U.S.C. § 626(e) (emphasis added).  "It is a general rule that a party not named in the notice of intent to sue cannot be named as a defendant in a subsequent suit."  *Gunning v. San Antonio Teachers Credit Union*, 652 F. Supp. 697, 698 (W.D. Tex. 1987).[33]  Indeed:

> The ADEA requires as a precondition to commencing a civil action against defendants, that the plaintiff first *file charges against the defendant* with the appropriate state agency, if any, and the EEOC. These requirements are *mandatory and not optional*. Generally, *parties not named in the notice or intent to sue cannot be named as a defendant* in a subsequent suit. The purpose of this requirement is to ensure that each defendant has knowledge of the alleged violation and a chance to resolve this dispute amicably before litigation.[34]

---

[33] *See also, e.g.*, *Barkley v. Carraux*, 533 F. Supp. 242, 244 (S.D. Tex. 1982) (dismissing ADEA claims "on the grounds that [defendants] were not specifically named in the charge filed with the EEOC"); *cf. Golnik v. Amato*, 299 F. Supp. 2d 8, 14 (D. Conn. 2003) ("The ADEA . . .  require[s] a plaintiff to exhaust his administrative remedies against a defendant before commencing suit. The City was neither referred to nor named in the CHRO/EEOC Complaint; the State Board is also not named as a respondent. Consequently, this Court lacks subject matter jurisdiction over the City and the State Board as to Plaintiff's ADEA . . . claims for lack of exhaustion of administrative remedies.") (citations omitted).  To the extent Dr. Khalil's failure to name Memorial Hermann in any charge deprives this court of subject matter jurisdiction over Dr. Khalil's claims against Memorial Hermann, Memorial Hermann alternatively makes this motion under Federal Rule of Civil Procedure 12(b)(1).

[34] *Pashby v. Letum Care, Inc.*, CIVA 05-1507, 2006 WL 2700697, at *4 (W.D. La. Sept. 15, 2006) (citations omitted) (emphasis added) (citing *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758 (1979) and *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969)).

The same is true under Title VII. *See, e.g.*, 42 U.S.C. § 2000e-5(f)(1) (providing that "a civil action may be brought ***against the respondent named in the charge***") (emphasis added); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014) ("We recognize a general rule that 'a party not named in an EEOC charge may not be sued under Title VII.'"); *Walsh v. Aries Freight Sys., L.P.*, CIV.A. H-07-2628, 2007 WL 3001650, at *3 (S.D. Tex. Oct. 12, 2007) (Rosenthal, J.) ("[A] party must be named in the EEOC charge before that party may be sued under Title VII unless there is a clear identity of interest between [the unnamed party] and a party named in the EEOC charge."); *Jurek v. Williams WPC-I, Inc.*, CIV.A. H-08-01451, 2009 WL 1748732, at *5 (S.D. Tex. June 17, 2009) (same) (Rosenthal, J.).[35]

The same is true under the TCHRA. *See* Tex. Labor Code § 21.254 ("Within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action ***against the respondent***.") (emphasis added);[36]

Here, Dr. Khalil's Charge of Discrimination names UTH—and ***only*** UTH—as the party who discriminated against her. Dkt. 8-3; Dkt. 8-1. Dr. Khalil never alleges that she filed any charge against Memorial Hermann; in fact, she concedes that she named only UTH. *See* Pet. ¶ 30 ("On June 06, 2016 Dr. Khalil filed a charge with [the EEOC] alleging ***UTH*** discriminated against her because of her age.") (emphasis added). Likewise, her Right to Sue Letter names only UTH. Dkt. 8-2. Dr. Khalil failed to name Memorial Hermann in in any charge filed with any commission and therefore failed to exhaust her administrative remedies. Therefore, her claims—each of which require this as a prerequisite to suit—should be dismissed.

---

[35] *See also Hartz v. Administrators of Tulane Educ. Fund*, 275 Fed. Appx. 281, 286-87 (5th Cir. 2008) ("Hartz failed to exhaust her administrative remedies against UHS because she failed to name UHS in her EEOC charge. Hartz only named 'Tulane Heath Sciences Center' in her charge, but . . . Tulane and UHS are separate and distinct business entities: Tulane is a non-profit educational institution whereas UHS is a for-profit limited liability company; Tulane and UHS are also domiciled at different addresses.").

[36] *See Boone v. Union Carbide Corp.*, 205 F. Supp. 2d 689, 693 (S.D. Tex. 2002) ("Because Boone never filed a charge of discrimination with the TCHR, nor received a right to sue letter from the TCHR, nor exhausted her administrative remedies under the TCHRA, this Court cannot preside over her TCHRA claim.")

23

**3.     Dr. Khalil's TCHRA claims are barred because she did not bring this lawsuit within 60 days of receiving her Right to Sue Letter.**

Under the TCHRA, "[w]ithin 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent." Tex. Labor Code § 21.254.  "Texas courts interpreting this provision have consistently held that the sixty-day requirement requires not just the filing of a lawsuit, but service of process as well." *Garcia v. Aramark Corr. Services, Inc.*, CIVA 3:07-CV-00444, 2008 WL 7627809, at *2 (S.D. Tex. Apr. 28, 2008).[37]  Here, according to UTH, Dr. Khalil received her Right to Sue Letter from the Texas Workforce Commission on December 30, 2016. Dkt. 8 at 2.  Under the TCHRA 60-day rule, she would have had to file and serve her lawsuit by February 28, 2017.  Dr. Khalil filed her lawsuit on May 5, 2017 and served Memorial Hermann on June 15, 2017. Dkt. 1-5 at 4, 46.   Her TCHRA claims should therefore be dismissed.

In conclusion, Memorial Hermann has established the foregoing valid defenses by a preponderance of the evidence, thereby requiring dismissal of all of Dr. Khalil's claims under the TCPA, even if she could otherwise put forth sufficient clear and specific evidence of her claims.

**E.     The TCPA entitles Memorial Hermann to costs, attorneys' fees, and other expenses incurred in defending against Dr. Khalil's claims.**

In addition to dismissal of Dr. Khalil's claims, Memorial Hermann is entitled to costs and fees associated with defending against them.  "If the court orders dismissal of a legal action under [the TCPA], the court shall award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." Tex. Civ. Prac. & Rem. Code § 27.009(a)(1); *see Sullivan v. Abraham*, 488

---

[37] Citing, e.g., *Windle v. Mary Kay, Inc.,* No. 05–02–00252–CV, 2003 WL 21508782, at *2 (Tex. App.—Dallas July 1, 2003, pet. denied) (mem. op.) and *Roberts v. Padre Island Brewing Co., Inc.,*28 S.W.3d 618, 620–21 (Tex. App.—Corpus Christi 2000, pet. denied); *see also Sibley v. Kaiser Foundation Health Plan of Texas*, 998 S.W.2d 399, 405 (Tex. App.—Texarkana 1999, no pet.).  "Service of citation outside the limitations period may be given effect only if the plaintiff exercised due diligence in procuring issuance and service of citation upon the defendant." *Roberts*, 28 S.W.3d at 621.

S.W.3d 294, 299 (Tex. 2016) ("Based on the statute's language and punctuation, we conclude that the TCPA requires an award of 'reasonable attorney's fees' to the successful movant.").

Memorial Hermann therefore respectfully requests that this Court award it court costs, reasonable attorney's fees, and other expenses incurred in defending against Dr. Khalil's claims, and that it be afforded the opportunity to submit evidence of these costs and fees at a later date. *See, e.g.*, *Schimmel v. McGregor*, 438 S.W.3d 847, 863 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (attorneys' fees issue can be severed and tried separately from TCPA dismissal).

**F.      Dr. Khalil must be sanctioned pursuant to the TCPA.**

Like the award of costs, Chapter 27 states that a "court shall award to the moving party . . . sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions."  Tex. Civ. Prac. & Rem. Code § 27.009(a)(2).  Memorial Hermann requests that the Court impose sanctions in the amount it deems appropriate to deter Dr. Khalil from bringing similar actions. *See, e.g.*, *Am. Heritage Capital, L.P. v. Gonzalez*, 436 S.W.3d 865, 881 (Tex. App.—Dallas, 2014, no pet.) (approving appropriate sanctions).  Because this case is a blatant attempt to re-litigate the same facts already litigated in *Khalil I*, a substantial sanction is warranted to deter Dr. Khalil "from bringing similar actions."  Tex. Civ. Prac. & Rem. Code § 27.009(a)(2).

## CONCLUSION AND PRAYER

For the foregoing reasons, Memorial Hermann respectfully requests that the Court dismiss Dr. Khalil's claims against Memorial Hermann with prejudice and award Memorial Hermann attorneys' fees and sanctions.  And particularly because the TCPA is a relatively new statute, oral argument will assist the Court in its interpretation; and Memorial Hermann thus requests oral argument.  Memorial Hermann further respectfully requests all other relief to which it may be legally or equitably entitled.

25

Respectfully submitted,

SEYFARTH SHAW LLP

By:/s/  Jesse M. Coleman
     Jesse M. Coleman, Attorney-in-Charge
     Texas Bar No. 24072044
     S.D. Texas I.D. No. 1101514
     Nicholas G. Grimmer
     Texas Bar No. 24065331
     S.D. Texas I.D. No. 1002170
     SEYFARTH SHAW LLP
     700 Milam Street, Suite 1400
     Houston, TX 77002
     jmcoleman@seyfarth.com
     ngrimmer@seyfarth.com
     Telephone: (713) 225-2300
     Telecopier: (713) 225-2340

     **ATTORNEYS FOR DEFENDANT
     MEMORIAL HERMANN HEALTH
     SYSTEM**

Dated: August 11, 2017

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2017, the foregoing instrument was filed with the clerk of the court using the CM/ECF system, which will send notification of such filing to all counsel of record, including the following:

Joseph Y. Ahmad
Weining Bai
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
(713) 655-0062

Larry D. Thompson
TBN: 19930000
Email: ldt@lorancethompson.com
2900 North Loop West, Ste. 500
Houston, TX 77092
(713) 868-5560
(713) 864-4671 – fax

ATTORNEYS FOR PLAINTIFF

Enrique M. Varela
Texas Bar No. 24043971
Andrea L. Batista
Texas Bar No. 24073895
SBN# 1383306
Assistant Attorney General, General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
512-463-2120 Phone
512-320-0667 Fax
envique.varela@oag.texas.gov
andrea.batista@oag.texas.gov

ATTORNEY FOR DEFENDANT UTH MCGOVERN MEDICAL SCHOOL

_/s/  Nicholas G. Grimmer_____
Nicholas G. Grimmer

40265498v.6