**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SAMIA KHALIL, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1954 |
| | § | |
| MEMORIAL HERMANN HEALTH | § | |
| SYSTEM, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Dr. Samia Khalil sued UTH McGovern Medical School and Memorial Hermann Medical System in Texas state court, alleging age discrimination and retaliation under the Texas Commission on Human Rights Act, TEX. LABOR CODE § 21.010, *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and Title VII, 42 U.S.C. § 2000e, *et seq.* The defendants timely removed to federal court. The petition named UTH McGovern Medical School and Memorial Hermann as defendants, but Dr. Khalil dismissed her claims against UTH, without prejudice. (Docket Entry No. 17). Memorial Hermann moved to dismiss under the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE § 27.001, *et seq.*, for judgment on the pleadings under Rule 12(c), and for a more definite statement under Rule 12(e). (Docket Entries No. 15, 16). Dr. Khalil responded to both motions, and Memorial Hermann replied. (Docket Entries No. 21, 22, 24, 25).

Dr. Khalil's response to Memorial Hermann's motion under the Texas Citizens Participation Act included several exhibits and a supplement. The court held a hearing on October 16, 2017, at which the parties argued the motions. At that hearing, Dr. Khalil's counsel represented that she is

no longer pursuing the claims for retaliation or under Title VII, and the court dismissed those claims, without prejudice. (Docket Entry No. 27). The court converted Memorial Hermann's Rule 12(c) motion for judgment on the pleadings to a motion for summary judgment, *see* FED. R. CIV. P. 12(d), and allowed the parties to supplement their motions and responses. (*Id.*). Memorial Hermann has moved for clarification, or, in the alternative, reconsideration of the ruling. (Docket Entry No. 29).

Based on the parties' submissions, arguments, and the applicable law, Memorial Hermann's motion to dismiss under the Texas Citizens Participation Act is granted as to Dr. Khalil's state-law discrimination claims. Those claims are dismissed, with prejudice, because the Texas Citizens Participation Act and the Texas medical peer-review immunity statute, TEX. OCC. CODE § 160.010, bar them, and because Dr. Khalil received her right-to-sue letter from the Texas Workforce Commission on December 30, 2016, but did not file this suit until May 5, 2017, after the 60-day limitations period under § 21.254 of the Texas Labor Code had expired. The motion to dismiss Dr. Khalil's federal discrimination claims under the Texas Citizens Participation Act is denied because in its motion for reconsideration, Memorial Hermann indicates that it seeks dismissal only of Dr. Khalil's state-law discrimination claims. (Docket Entry No. 29, at p. 12). Memorial Hermann's supplemented motion for summary judgment should address only the remaining federal discrimination claims. The motion for reconsideration, (Docket Entry No. 29), is denied as moot.

The reasons for these rulings are explained below.

I. **Background**

The background facts are based on Dr. Khalil's state-court petition in this lawsuit and the exhibits attached to the parties' submissions. This is Dr. Khalil's second lawsuit based on her work at Memorial Hermann. In the earlier suit, Dr. Khalil asserted state-law claims for several business

torts. *See Memorial Hermann Health Sys. v. Khalil*, 2017 WL 3389645 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017). The facts of the case are also set out in detail in the Texas Court of Appeals decision rejecting Dr. Khalil's claims. *Id.* at *1–3.

Dr. Khalil was a clinical professor of pediatric anesthesiology at UTH and worked at Memorial Hermann as a pediatric anesthesiologist. In December 2014, Dr. Carin Hagberg, the chair of the Anesthesiology Department at UTH, told Dr. Khalil that the hospital administration had received "vague complaints" about Dr. Khalil and that the hospital had asked Dr. Hagberg to implement a corrective-action plan for Dr. Khalil. (Docket Entry No. 1, Ex. 5 at ¶ 8). Dr. Khalil met with a corrective-action plan advisor several times. In June 2015, she received a report that she had not adequately complied with the "patient safety checklist" component of the plan. Instead, she had a "lack of team attitude or just a simple disagreement with regards to accountability on certain aspects of the checklist." (*Id.* at ¶ 10).

On August 3, 2015, Dr. Hagberg put Dr. Khalil on administrative leave based on "patient safety issues." These issues arose from a peer review of her work, including her anesthesiology charts. Dr. Khalil alleges that this administrative leave was the equivalent of suspending her from clinical duties at UTH. She also alleges that the 2015 peer review was different from her previous peer reviews in two ways: she was not allowed to review or refute the responses; and it was based on a larger sample of anesthesia charts. Dr. Khalil alleges that the UTH suspension "had the practical effect of preventing her from performing her clinical duties at Memorial Hermann." (*Id.* at ¶ 15).

On August 14, 2015, Dr. Hagberg told Dr. Khalil that she needed to attend the "PACE" or "KSTAR" program to assess her ability to practice with skill and safety. In a letter to the chair of

the Memorial Hermann credentials committee dated November 30, 2015, Dr. Khalil stated, "[a]s for compliance with the EAP recommendations for an outside assessment by PACE, I am unwilling to participate in a process that is flawed by design and intrinsically unfair." (Docket Entry No. 15, Ex. B at p. 1083). In her petition, however, Dr. Khalil alleges that she applied to the PACE program and "was in line to go" on January 4, 2016. (Docket Entry No. 1, Ex. 5 at ¶ 22).

Dr. Khalil independently contacted Dr. Charles Coté, an anesthesiologist at Harvard Medical School, to review her anesthesiology charts. His report to her stated that, "[a]s far as I can tell there are no medical legal issues regarding harm to the patients, rather the critiques are management style rather than substantive errors in judgment." (*Id.* at ¶ 18). Dr. Khalil presented Dr. Coté's report to UTH, but, according to her petition, UTH did not consider it because it was "outside their normal process." (*Id.* at ¶ 19).

In August 2015, Dr. Khalil filed a grievance with UTH under its established grievance process. UTH denied the grievance on September 14, 2015; Dr. Khalil appealed the denial in September. In November, the grievance committee denied Dr. Khalil's appeal and Dr. Hagberg informed her that she no longer had clinical research privileges. Later that month, Dr. Khalil received a letter confirming that her appeal was denied. She made a "final appeal" to the president of the UTH Science Center. The president denied that appeal in December 2015.

In a letter dated November 19, 2015, the chair of the Memorial Hermann credentials committee advised Dr. Khalil that her application for reappointment to the Memorial Hermann staff had been tabled because: (1) Dr. Khalil had not completed the PACE program; (2) the credentialing committee was concerned about clinical patient safety based on Dr. Khalil's anesthesiology charts; (3) the committee needed additional information from the Anesthesiology Department; and (4) Dr.

Khalil was "not actively practicing clinical anesthesia with patients." (*Id.* at ¶ 22). On November 30, 2015, Dr. Khalil responded that "it borders on absurd to suggest that as a basis for my appointment being incomplete when it was UT, at the urging of Memorial Hermann Hospital that suspended my clinical duties on August 3, 2015 with no notice and no hearing or due process." (*Id.*)

In December, Memorial Hermann's chief of staff, on behalf of the medical executive committee, wrote Dr. Khalil a letter about the re-credentialing process. The subject line states "Final Peer Review Ratings." The letter identified two cases in which Dr. Khalil failed to meet the standard of care. (Docket Entry No. 15, Ex. B at pp. 1086). The letter stated that the committee "accepted and agreed with" the findings and recommendations of the credentials committee and the medical staff pediatric quality review committee that "aggregated information in [Dr. Khalil's] overall credentials file, to date, is disturbing and has led to the finding that your clinical practice represents the potential of imminent patient harm." (*Id.*). The letter listed several findings, including that Dr. Khalil failed to read patient records, communicate with surgeons, demonstrate insight or basic knowledge, recognize serious symptoms, or acknowledge incorrect dosing. (*Id.*). The letter concluded that "[n]o action has been taken on your incomplete application for reappointment. Your current appointment will expire on January 31, 2016. If the application is completed and progresses through the committee structure, regrettably, I doubt the recommendation will be favorable." (*Id.* at p. 1087).

Dr. Khalil did not complete the corrective-action plan. Her credentials with Memorial Hermann expired on January 31, 2016. On February 2, Memorial Hermann's chief of staff wrote Dr. Khalil a letter confirming that her credentials had expired because "[i]ncomplete applications cannot be considered for appointment," but if she is "able to address and meet the previously

communicated deficiencies, [she] may submit an application for appointment and clinical privileges that will be considered and processed as an initial application." (*Id.* at p. 1116). Dr. Khalil does not allege that she ever submitted a completed renewal application.

On June 6, 2016, Dr. Khalil filed a charge with the Equal Employment Opportunity Commission, alleging that UTH had discriminated against her based on her age. On June 8, 2016, Dr. Hagberg informed Dr. Khalil that she would not be reappointed to the UTH faculty for the 2016–2017 term, and that for the remaining period of her employment, Dr. Khalil would receive special assignments from Dr. Hagberg. Dr. Hagberg instructed Dr. Khalil to turn in her keys and access badge. Dr. Khalil alleged that UTH terminated her on August 31, 2016, and that after she was suspended from clinical duties, UTH hired two younger pediatric anesthesiologists. In her affidavit, Dr. Khalil stated that Memorial Hermann also replaced her with younger pediatric anesthesiologists: "Since my suspension and eventual effective termination by Memorial Hermann, the hospital has acquired at least [four] pediatric anesthesiologists under the age of 40 to replace me . . . ." (Docket Entry No. 22, Ex. A).

Dr. Khalil alleged that: (1) UTH and Memorial Hermann intentionally delayed implementing the corrective-action plan; (2) UTH, "at the apparent urging of and in concert with Memorial Hermann," waited nearly nine months to complete its review of Dr. Khalil's progress and review her anesthesia charts; (3) Memorial Hermann delayed submitting her re-credentialing packet for a month and a half; (4) Memorial Hermann "accepted UTH's conditions and reasoning to remove Dr. Khalil without taking into consideration Dr. Khalil was entitled to rights under the By Laws she did not get the opportunity to exercise"; and (5) Memorial Hermann "refused to offer Dr. Khalil any alternative guidelines to apply for renewal of her privileges; instead, they discouraged her from applying stating

the likelihood of her being considered was very diminutive." (Docket Entry No. 1, Ex. 5 at ¶¶ 21, 33).

In the earlier state-court lawsuit, Dr. Khalil sued Memorial Hermann for defamation, fraud, tortuous interference with an existing contract, intentional infliction of emotional distress, "assisting and encouraging," conspiracy, and age discrimination, and also challenged the Texas Citizens Participation Act under the Texas Constitution's open courts provision, TEX. CONST. art. 1, § 13. Memorial Hermann moved to dismiss several of those claims under the Texas Citizens Participation Act, but because the trial court did not rule on Memorial Hermann's motion to dismiss within 30 days, the motion was denied by operation of law under the Texas Citizens Participation Act. The Texas Court of Appeals reversed the denial of the motion, rejecting all of Dr. Khalil's claims, except the age-discrimination claim, which Memorial Hermann had not moved to dismiss. *See Khalil*, 2017 WL 3389645, at *18.

In this removed suit, Dr. Khalil asserted claims against UTH and Memorial Hermann for age discrimination and retaliation under the Texas Commission on Human Rights Act, the federal Age Discrimination in Employment Act, and Title VII. Dr. Khalil voluntarily dismissed her claims against UTH, without prejudice. (Docket Entries No. 17). These motions followed. They are analyzed based on the allegations, the parts of the record appropriately considered, and the applicable legal standards.

## II.    The Applicable Legal Standards

The Texas Citizens Participation Act provides:

Sec. 27.005. RULING.
(a) The court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion.

(b) Except as provided by Subsection (c), on the motion of a party . . . a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:

      (1) the right of free speech;
      (2) the right to petition; or
      (3) the right of association.

(c) the court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.

(d) Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.

Sec. 27.006. EVIDENCE.
(a) In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

TEX. CIV. PRAC. & REM. CODE §§ 27.005–006. The Act is intended "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002. The Act "shall be construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011. It creates "a new set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of the merits of legal proceedings or filings that are deemed to implicate the expressive interests protected by the statute, with the remedies of expedited dismissal, cost-shifting, and sanctions for any found wanting." *Serafine v. Blunt*, 466 S.W.3d 352, 369 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring).

The Act's burden-shifting mechanism is different from the standards under Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. *See Cuba v. Pylant*, 814 F.3d 701, 711 (5th Cir. 2016) (explaining the two-step inquiry and that the "'clear and specific evidence' requirement . . . is more like a pleading requirement than a summary-judgment standard"). The Fifth Circuit has not decided whether the Act is substantive or procedural, but it has "assumed—without deciding—[that the Act] controls" as state substantive law. *Pylant*, 814 F.3d at 706; *see Culbertson v. Lykos*, 790 F.3d 608, 631 (5th Cir. 2015) ("We have not specifically held that the TCPA applies in federal court; at most we have assumed without deciding its applicability."); *but see Pylant*, 814 F.3d at 719 (Graves, J., dissenting) ("Applying an *Erie* analysis, I conclude that the TCPA is procedural and must be ignored."). The Fifth Circuit has also held that a federal-court defendant may bring a motion to dismiss under Louisiana's similar anti-SLAPP statute. *See Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009). Two Southern District of Texas courts have held that the Texas Act is substantive and applies in federal diversity jurisdiction cases. *See Banik v. Tamez*, 2017 WL 1228498, at *2 (S.D. Tex. Apr. 4, 2017) ("Since the Fifth Circuit has previously ruled on state anti-SLAPP statutes, and Plaintiff has not identified any contrary precedent in this Circuit, this Court has determined that the TCPA should apply in this case."); *Williams v. Cordillera Commc'n's, Inc.*, 2014 WL 2611746, at *2 (S.D. Tex. June 11, 2014) (same).

## III. Analysis

### A. The Texas Citizens Participation Act

The parties dispute whether the Texas Citizens Participation Act applies to state-law discrimination claims in federal court. Dr. Khalil argues that, under Erie, the Act is procedural and conflicts with the Federal Rules of Civil Procedure. Alternatively, she argues that even if the Act

is substantive, it does not apply to discrimination claims. Memorial Hermann argues that the Act is substantive and must apply. Although the Fifth Circuit has not decided this issue, its previous assumption that the Act applies in federal court and its application of the similar Louisiana anti-SLAPP statute are persuasive. *See Pylant*, 814 F.3d at 706–07; *Henry*, 566 F.3d at 169. The Act's liberal-construction clause and the fact that the Act excludes some causes of action, but not discrimination claims, TEX. CIV. PRAC. & REM. CODE § 27.010(a)–(d), support the conclusion that the Act applies to Dr. Khalil's state-law discrimination claims in federal court. Because Memorial Hermann clarified that its Texas Citizens Participation Act motion seeks relief only from Dr. Khalil's state-law claims, the court need not decide whether the Act applies to Dr. Khalil's federal discrimination claims.

Under the Act, Memorial Hermann must first show, by a preponderance of the evidence, that Dr. Khalil's action "is based on, relates to, or is in response to" Memorial Hermann's exercise of the right of free speech, petition, or association. TEX. CIV. PRAC. & REM. CODE § 27.005(b). If Memorial Hermann does so, the burden shifts to Dr. Khalil to establish by "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

The Texas Court of Appeals considered the same facts and communications that are at issue in this discrimination suit, but under different causes of action for defamation, fraud, tortuous interference, intentional infliction of emotional distress, and conspiracy. That court held that the Texas Citizens Participation Act barred Dr. Khalil's claims because Memorial Hermann's "communication regarding Dr. Khalil's competence was a communication made in connection with an issue related to health or safety, and thus, a matter of public concern," and Dr. Khalil's lawsuit was "in response to" Memorial Hermann's communications on her competence or lack thereof.

*Khalil*, 2017 WL 3389645, at *6. The fact that the claims here are discrimination claims does not remove or reduce that court's conclusions about the status of the communications. Because the factual allegations and communications are the same, (*see* Docket Entry No. 15, Appendix (comparing the factual allegations)), the Texas Court of Appeals's analysis applies here. Dr. Khalil's allegations are about physicians and healthcare administrators and their evaluations, discussions, and reports about her performance as a physician. The communications at issue are related to health and safety, matters of public concern. Memorial Hermann has met its burden to invoke the Act. *See Khalil*, 2017 WL 3389645, at *6.

The burden shifts to Dr. Khalil to show clear and specific evidence that would establish the prima facie elements of her state-law discrimination claims. Under the Act, clear and specific evidence to support a prima facie case must "describe[] the clarity and detail required to avoid dismissal." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). The detail must be enough "to show the factual basis for [her] claim." *Id.* at 591. Although the Act "initially demands more information about the underlying claim" than the Texas state fair-notice pleading standards, it does not "impose an elevated evidentiary standard or categorically reject circumstantial evidence" or "impose a higher burden of proof than that required of the plaintiff at trial." *Id.* at 591.

Under the Texas Commission on Human Rights Act, "an employer commits an unlawful employment practice if because of . . . age the employer fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." *Maestas v. Apple, Inc.*, 546 F. App'x 422, 424–25 (5th Cir. 2013) (quoting TEX. LABOR CODE § 21.051). A prima facie case of age discrimination under that statute requires that a plaintiff to show that she: "(1) suffered an

adverse employment action; (2) was qualified for the position; (3) was within the protected class when the adverse action occurred; and (4) was replaced by someone younger or outside the protected class, treated less favorably than a similarly situated younger employee, or otherwise discharged because of . . . age." *Id.* at 425–26.

Dr. Khalil argues that Memorial Hermann was her employer, but that the existence of an employment relationship is a disputed fact question that cannot be decided on the pleadings. She submits a bullet-point list of facts stating that Memorial Hermann had the ability to supervise, control, and set her work schedule; she "was a member of the hospital staff who was subject to Medical Staff Bylaws"; Memorial Hermann "decided whether to, and how long to, renew [her] credentials"; Memorial Hermann's chief of staff threatened to "summarily suspend" her; and Memorial Hermann did not place her on the Pediatric Anesthesia schedule. (Docket Entry No. 21, at p. 7). She argues that under the federal economic-realities test or the common-law control test, she has alleged sufficient facts to establish an employment relationship.

Memorial Hermann responds that Dr. Khalil has only alleged an employment relationship with UTH, not Memorial Hermann. Memorial Hermann argues that under Texas law, hospitals cannot employ doctors. Instead, doctors are independent contractors with regard to the hospitals where they have staff privileges. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 2017 WL 2608352 (Tex. June 16, 2017). Although federal law controls whether a person is an employer or employee, "courts can look to state law to understand the nature of the employment relationship." *Griffith v. City of New Orleans*, 2013 WL 2555787, at *3 (E.D. La. June 10, 2013) (citing *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 465 (5th Cir. 2001)). Memorial Hermann argues that under the federal or state criteria, Dr. Khalil has no employment relationship with Memorial Hermann.

12

According to Memorial Hermann, Dr. Khalil improperly conflates and equates her employment with UTH with the privileges and credentials she held at Memorial Hermann that allowed her to practice medicine there.

Deciding this motion does not require the court to resolve this dispute. For purposes of determining whether Dr. Khalil has met her burden of showing the prima facie elements of age discrimination, the court assumes the existence of an employment relationship between Dr. Khalil and Memorial Hermann.

Dr. Khalil argues that she has established the elements of her prima facie case because: (1) she is 77 years old; (2) she was qualified for the position; (3) Memorial Hermann terminated her; and (4) Memorial Hermann replaced her with younger anesthesiologists. (Docket Entry No. 22, at p. 13). Memorial Hermann responds that the record shows that it did not terminate Dr. Khalil's employment. Rather, the record is undisputed that Dr. Khalil's privileges at Memorial Hermann expired after she did not complete her application to renew her staff privileges or the corrective-action program that UTH required of her. Memorial Hermann cites to record evidence showing that Dr. Khalil's credentials with Memorial Hermann expired on January 31, 2016. She alleges that UTH terminated her on August 31, 2016, leaving a seven-month gap between the Memorial Hermann actions she challenges and her termination by UTH.

Dr. Khalil's prima facie age-discrimination claim fails because she has not identified clear and specific evidence that would show that Memorial Hermann caused her to suffer an adverse employment action. Dr. Khalil alleges that she was "effectively" terminated on January 31, 2016, when her "application for reappointment at Memorial Hermann was denied as a result of actions taken by the Hospital's administrators . . . ." (Docket Entry No. 22, Ex. A). But Memorial Hermann

did not terminate Dr. Khalil; her staff privileges there expired. Memorial Hermann's chief of staff wrote her two letters. The first informed her that her that "no formal steps to effect a suspension are being taken at this time," that "[n]o formal request for corrective action is being made because you are not currently exercising clinical privileges," and that "[n]o action has been taken on your incomplete application for reappointment." (Docket Entry No. 15, Ex. B at pp. 1086–87). The second letter informed her that her credentials had expired because her application for reappointment was incomplete. (*Id.* at p. 1116).

Even if the record showed that Memorial Hermann's actions can be characterized as terminating Dr. Khalil's staff privileges, patient safety is a legitimate, nondiscriminatory reason for a hospital to remove a doctor's credentials. *Patel v. Midland Memorial Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002) ("Midland and its doctors have proffered a legitimate, nondiscriminatory reason for his suspension. Specifically, they contend that his privileges were suspended because of concerns for patient safety."). The record clearly shows that to the extent Memorial Hermann took an adverse employment action as to Dr. Khalil, it was based on patient safety. Several Memorial Hermann committees considered Dr. Khalil's peer reviews and patient charts, and the medical executive committee concluded that Dr. Khalil failed to meet the standard of care in two cases and that her "clinical practice represents the potential of imminent patient harm." (Docket Entry No. 16, Ex. B at p. 1086–87). Dr. Khalil has failed to allege or identify facts that would show that Memorial Hermann's concerns about patient safety were a pretext for discriminating against her because of her age.

Dr. Khalil has not identified clear and specific evidence that would show the prima facie elements of age discrimination.

### B. Memorial Hermann's Defenses

Under the Texas Citizens Participation Act, even if a plaintiff meets her burden of showing the elements of her prima facie case, the court must dismiss the claim if the defendant presents a valid defense supported by a preponderance of the evidence. "Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE § 27.005(d). Even if Dr. Khalil had met her burden, Memorial Hermann has met its burden to establish valid defenses to her state-law discrimination claims. Both the Texas medical peer-review immunity statute and the statute of limitations under § 21.254 of the Texas Labor Code are alternative grounds for dismissal under the Texas Citizens Participation Act.

#### 1. Immunity

The Texas medical peer-review immunity statute, TEX. OCC. CODE § 160.010(b), and the federal Health Care Quality Improvement Act, 42 U.S.C. § 11111, provide immunity for actions taken in the course of medical peer reviews.

The Texas immunity statute provides that "[a] cause of action does not accrue against a member, agent, or employee of a medical peer review committee or against a health care entity from any act, statement, determination or recommendation made, or act reported, without malice, in the course of medical peer review." TEX. OCC. CODE § 160.010(b). The federal Health Care Quality Improvement Act provides that "any professional review body . . . shall not be liable for damages under any law of the United States or of any State . . . with respect to the action. The preceding

15

sentence shall not apply to damages under any law of the United States or any State relating to the civil rights of any person or persons . . . ." 42 U.S.C. § 11111(1)(D).

The Texas medical peer-review statute bars Dr. Khalil's state-law claims because Memorial Hermann is a "health care entity" and her claims challenge recommendations made in the course of medical peer review. Dr. Khalil alleged that Memorial Hermann "effectively terminated" her by refusing to offer her "any alternative guidelines to apply for renewal of her privileges; instead, they discouraged her from applying stating the likelihood of her being considered was very diminutive." (Docket Entry No. 1, Ex. 5 at ¶ 33). This falls far short of alleging that Memorial Hermann's determination was made with malice. Memorial Hermann has met its burden to show a valid immunity defense to the state-law discrimination claims under the Texas medical peer-review immunity statute.

Dr. Khalil alleges age discrimination under the Texas Commission on Human Rights Act and the federal Age Discrimination and Employment Act. This is a civil rights case. The federal Health Care Quality Improvement Act's "civil rights" exclusion makes that statute inapplicable here. 42 U.S.C. § 11111(1)(D).

### 2.    The Statute of Limitations

Memorial Hermann also argues that Dr. Khalil's state-law discrimination claims are barred because she did not file this lawsuit within 60 days of receiving her right-to-sue letter. Dr. Khalil responds that she asserted her age-discrimination claim within the 60-day time frame in the earlier state-court lawsuit she filed against Memorial Hermann. Dr. Khalil alleges that the claim in that case remains live, but that case was stayed pending an interlocutory appeal from rulings on the motions under the Texas Citizens Participation Act in that court. *See Khalil*, 2017 WL 3389645. Dr. Khalil

16

argues that the stay in that case tolled the 60-day period, citing § 51.014(b) of the Texas Civil Practice and Remedies Code, which "stays all other proceedings in the trial court pending resolution of [an] appeal."

Dr. Khalil received her right-to-sue letter from the Texas Workforce Commission on December 30, 2016. She filed this suit on May 5, 2017, long after the 60-day limitations period under § 21.254 of the Texas Labor Code expired. The interlocutory appeal and stay in her earlier state-court suit did not toll Dr. Khalil's time to file this suit. Dr. Khalil's state-law discrimination claims are barred because Dr. Khalil did not bring this suit within 60 days of receiving her right-to-sue letter.

### C.    Attorney's Fees and Sanctions

If an action is dismissed under the Texas Citizens Participation Act, "the court shall award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." TEX. CIV. PRAC. & REM. CODE § 27.009. Dr. Khalil's state-law discrimination claims are dismissed under the Act. The issue of attorney's fees and sanctions will be determined after the remaining claims are resolved.

## IV.    Conclusion

The motion to dismiss under the Texas Citizens Participation Act, (Docket Entry No. 15), is granted in part and denied in part. Dr. Khalil's state-law discrimination claims are dismissed, with prejudice, because amendment would be futile. Her federal discrimination claims may proceed. The Rule 12(c) motion for judgment on the pleadings, (Docket Entry No. 16), is converted to a motion

for summary judgment. Memorial Hermann must file its supplemented motion for summary judgment on the federal claims by November 6, 2017. The motion for reconsideration, (Docket Entry No. 29), is denied as moot.

SIGNED on October 30, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge